May it please the Court. The State Court recently applied Strickland. Police found Torres in a pool of blood at the bottom of a staircase that rose six feet. He had catastrophic that the cause of his death was blunt force trauma to the head, but they disagreed on the manner of his death. Dr. What? Dr. Dunn, forgive me, but I'm going to start you right out. We don't have too much time. You see, even where the Indiana Appellate Court appeared to recite the correct standard, it stated that the standard required done to show I'm going to quote now a reasonable probability that had Dr. Socio's testimony been offered, the jury would have concluded that Torres injuries were solely the result of a fall, end quote. And that's at the appendix at 17. Why would Dunn have to convince a jury that injuries solely resulted from a fall? Isn't that a stricter standard than Strickland? Because it requires Dunn to prove his innocence rather than to present evidence that would create a reasonable doubt. Wouldn't it be enough if Dr. Socio's testimony established reasonable doubt as to whether the injuries were attributable to a beating? The best that Dr. Socio could offer for Dunn was that he thought the injuries resulted from a fall. And so and so he would have to show that for there to be a fair probability of a reasonable probability of a different outcome at the trial, because the state's theory at trial was that there was a beating on the ground. Mr. Dunn, can I ask you a question? I asked the same question to Mr. Dowland, but I'd like to ask you this question. I didn't see anything. I saw a great deal in the record. I saw a great deal regarding blood spatter evidence. Now again, this fellow, the victim in this case fell at most six feet is from what I can tell from the record. But there was a great deal of blood spatter evidence that was presented at the trial, I think, which and I think the government's or the state's closing argument in large part relied upon common sense and said, use your common sense and consider the blood spatter evidence and you don't get that from a six foot fall. Did Mr. Dunn, does Dr. Socio or did Mr. Dunn ever proffer any evidence whatsoever that would have explained or contradicted the state's blood spatter evidence? No, no. Dr. Socio agreed that he was not a blood spatter expert. So what we have is Dr. Socio saying, it could have been a fall and then, or I'm sorry, it could have been a fall and then when pushed, he says, I think it was a fall. That's correct. And Dr. Socio never testified that Torres couldn't have been beaten while he was on the ground, even though the prosecutor gave him three opportunities to say so. And he just had no answer for the state's blood spatter evidence. To reach his conclusion, he had to ignore some of the evidence. He ignored the blood spatter, the testimony that Marks gave that there was impact spatter on the wall and that there was cast off. And even though Socio agreed that he wasn't a of the blood spatter. And he said he did not see any cast off. And he suggested that the medium impact spatter on the wall could have spewed from Torres's head. And Mark said, that's just not true. That medium impact spatter had to be caused by something impacting a pool of blood that was on the ground. So Socio's testimony could not answer the state's blood spatter evidence. I'd like to go back to my question, please. And the iterations of Strickland that were given by the state appellate court. Yes, Your Honor, the court correctly stated the Strickland standard seven times. The court incorrectly stated the Strickland standard at least three times. I don't know if that's true, Your Honor. The quote that the district court relied on was a conclusory statement that combined the state's post-conviction standard with Strickland prejudice. So a state appellate court will not reverse the post-conviction court unless it commits a clear error. To determine whether the post-conviction court committed clear error here, the state appellate court reviewed Strickland de novo. It conducted a prejudice analysis. It compared Dunn's proffered evidence with the evidence that was presented at trial. And that's exactly what the court is supposed to do under a Strickland prejudice analysis. Well, at various points, the Indiana appellate court identified this standard as whether the evidence as a whole leads unerringly and unmistakably to the conclusion that the evidence produced here, produced from consulting with a forensic pathologist, would have changed the outcome of Dunn's trial. This is the standard that the Indiana court used to conclude its analysis and affirm the post-conviction court's denial of the petition. It is the wrong standard because it requires Dunn to produce unmistakable evidence that consulting with a pathologist would have changed the outcome, not whether evidence establishes a reasonable probability of such. And I think that, you know, when you look at it, it's clear from the paragraphs that precede these statements that the court, in fact, applied a stricter standard and required Dunn to show that the consultation would have changed the outcome. You know, for instance, the court held that testimony by Dr. Socio was not definitive, in that there were facts supporting the arguments that the fall would not have caused the injuries. And that wouldn't defeat a reasonable probability standard, but it's clear, to me at least, that the court was applying its stated standard of requiring Dunn to show the pathologist's testimony would have changed the outcome. So I have a problem here. Go ahead, Mr. Dunn. I'm sorry. No, I was saying what the court was requiring Dunn to do was show that the post-conviction court committed a clear error, and he couldn't show that based on de novo review of Strickland prejudice. And this court has said repeatedly that even if a state court incorrectly states the Strickland prejudice standard, if its analysis follows Strickland, then its decision is not contrary to clearly established federal law. Even if this court were to disagree. Mr. Dunn, let me ask you a question. I assume that the state concedes that, at least the way I read the state's argument, the state concedes that in the final paragraph, the Indiana Court of Appeals misstated the Strickland standard when it said, based on this record, we cannot say that evidence as a whole leads unerringly and unmistakably to the conclusion that the evidence pursues from consulting with a forensic pathologist would have changed the outcome of Dunn's trial. You would concede that that's the wrong standard, right? That's correct. But your argument is that shorthand for what the government or what the Court of Appeals repeatedly stated throughout its opinion, which was the correct standard. You said they stated at least seven times. That's correct. And in the introduction, would you agree that in the introduction, in the first paragraph, the state writes, the Court of Appeals writes, we cannot say that the evidence as a whole leads unerringly and unmistakably to the conclusion that there is a reasonable probability that the evidence pursues from consulting with a forensic pathologist would have changed the outcome of Dunn's trial. That's the correct standard, right? Reasonable probability is correct standard. Yes, it is. So the only thing the Court of Appeals did is in the last paragraph of its opinion, it left out the words reasonable probability, despite the fact that it states that at least seven or eight times through its opinion. Is that your position? That's our position, Your Honor. That's correct. All right. And even if, let me ask you one other question along these lines. Even if we agree with the district court that the Court of Appeals from the state of Indiana applied the wrong standard, we can still uphold Dunn's conviction if we apply the correct standard and determine that the evidence that he submitted, in other words, Dr. Scosio's testimony, if we apply the right standard and conclude that there's a reasonable probability or a reasonable probability that he would not have been acquitted, we can still affirm the conviction, right? That's right. The Court could affirm on that ground or it could affirm because Dunn hasn't proven under de novo review that his counsel performed deficiently. His overall strategy was reasonable. He had no reason to think he could do better than Dr. Crenca's testimony. And it was reasonable for counsel not to give the state another theory of prosecution. Dr. Scosio agreed that if Dunn had been pushed from the top of the staircase, that he would have concluded that it was a homicide. Yeah, but the state's entire theory of trial was that they couldn't prove a push, right? No. The only theory of trial was a beating after Torres fell, right? That was the state's theory. And the reason that was the state's theory is because the state followed its experts. But it also had no witnesses that could distinguish between a push and a fall accidental. This jury was given a first degree murderer or not guilty, right? Correct. Nothing in between. And if anybody were trying to attribute criminal responsibility to the fall down the stairs, it could have been anything from accidental to second degree murder, right? Well, there was evidence that Dunn pushed Torres down the stairs. Dunn told an officer that he pushed Torres down the stairs. And right after it happened, Willie told his brother that Dunn just pushed Torres down the stairs. But the state didn't try to pursue that as a theory of murder. That's correct, because its experts didn't support that. But what I'm saying is, if Dunn would have presented Dr. Scosio, and he would have said that a fall could have caused Torres's injuries, then the state could have pursued the theory that Dunn pushed Torres down the stairs. But not for first degree murder. I think it could have. And that's what Dunn's own... But at the very least, that jury would have to have been instructed on several lesser included offenses, correct? It's possible, yes. Mr. Trump, don't worry, I'm going to give you some, you know, extra time for your rebuttal because we're peppering you. But my view is that the point is being missed here. Even when the court said the right standard, and it did a couple of times, it required Dunn to prove the fall was wholly responsible for the death, not prove that there was reasonable doubt as to the cause of the death. And my view is that flips the burden. You know, just so we're clear on my viewpoint. Can I ask you a question, Mr. Dunn? This is one of these puzzles of modern look through jurisprudence in the habeas area. And I know both you and Petitioner's Council know this area very well. One of the things that complicates this a little bit for me is that the trial judge, the state PCR court, seems pretty clearly to have misstated the standard at a critical point. Paragraph 31, Petitioner has failed in his burden to develop evidence that establishes that consulting with another expert would have changed the outcome of the trial. And then we get the unerringly and unmistakably language from the Court of Appeals applied to the conclusion reached by applying the wrong standard. So I guess that to me, that makes it extra complicated to try to do the sort of deference that we try to do in habeas cases. I agree that it would be more difficult to defend under 2254 if the Court of Appeals didn't apply its own de novo review under Strickland prejudice. But our position is that's what it did here in the middle of its opinion, and its application was reasonable. If I may, I'll reserve the rest of my time for rebuttal. You'll get extra, of course. Mr. Dowling. May it please the Court. I'm Alex Dolan, and I represent Delaine Dunn. Dr. Sozio was unequivocal. There was no murder at the bottom of the stairs. Upon reviewing Mr. Torres' injuries, Dr. Sozio concluded, that tells me all day, every day, it's a fault. Does Dr. Scozio address the blood spatter evidence? He does, Your Honor. Is he an expert and qualified to address the blood splatter evidence? Because I got from your brief that, well, the brief which largely just quotes earlier opinions, by the way, I got, I took from that that he's not a blood spatter expert, and he doesn't, nobody addresses the blood spatter. The district court didn't do it, and Mr. Dunn doesn't do it. Dr. Sozio is not a blood spatter expert, Your Honor. He had a theory that perhaps some of the blood evidence could have been explained by the laceration on the back of Mr. Torres' scalp and blood spurting from that. But he can't, it's just a guess. If he's not a blood spatter expert, he can't testify to that, and it's just a guess. And by the way, I don't mean to just argue with you, but wasn't there evidence in the record of the trial from the state's forensic examiner that it could have been a fall anyway? I guess I just don't see what Dr. Sozio adds here. You've already got in evidence that it could have been a fall. The district court- Dr. Sozio, I'm sorry to interrupt you, Your Honor. Go ahead. No, go ahead. You go ahead. Dr. Sozio adds quite a bit here, Your Honor, and I believe the reason why he adds so much is while he ultimately decides that the cause of death is undetermined, he explains quite clearly- Isn't that a big deal? He's saying the cause of death is undetermined, so he can't say it was an accident. He says the cause of death is undetermined. He could say my best guess is it was a fall. What difference does that make? The difference is that he is in a different- he's explaining differently this category of undetermined than Dr. Shrinka was able to explain. Dr. Sozio decides on an undetermined cause of death because he does not know what occurred at the top of the stairs, and he's quite clear about that, but based on the bottom of the stairs, he is unequivocal that, of course, it was a fall that caused this. He's able to explain all of the injuries that Mr. Torres had. He's able to explain the injuries to the top of the scalp, which is more consistent with a fall than a bludgeoning. He's able to explain the straight line injuries to the ribs, which is consistent with a fall. What about the broken rib that had the force of an automobile crash? I was curious here. The district court, in its opinion- when I read the opinion, when I read the district court's opinion, I thought this guy fell from a balcony. I thought he fell 10, 14 feet. He fell six feet. I mean, this man, this victim was beat extraordinarily badly. I mean, his skull was crushed. His liver was lacerated. His ribs were broken, and all because he fell six feet. And the district court said, well, maybe he was unsteady on his feet. Maybe he was, and he was awfully drunk, but a six-foot fall for those damages and then failure to explain the blood spatter evidence. I guess what I'm asking you is, even if the district court, even if the court of appeals applied the wrong standard, even though they stated the correct standards seven or eight times, if they applied the wrong standard at the end, why shouldn't we just affirm the conviction based on de novo review and say, look, Dunn has not met the standard of ineffective assistance of counsel because he can't meet the prejudice prong, even if he can meet the first prong? There are a number of reasons why we believe we meet that prejudice prong, your honor. First of all, just to defer to Judge Simon, he said how Torres died is the whole case. And so all that's needed for a different result is one juror voting differently. And the jurors were told to trust only the experts. They were told that... By the government, that's argument though. You're not arguing to a jury here. You have to be in a much higher standard to get this reversed on habeas review than just telling us maybe the government, maybe one juror would reject the government's argument in closing. It's more than that though, your honor, because here we have a situation where Aletha and Willie both were eyewitnesses to this crime. Aletha heard Mr. Torres or Mr. Dunn saying to Mr. Torres, don't you hit me with that bat. Willie actually saw the entire altercation go down because he was getting a drink of water. He looked outside, saw Mr. Torres hit Mr. Dunn with the bat, saw a struggle over the bat and then saw Mr. Torres fall. The jury was told to believe the experts and not to believe Aletha and Willie. If Dr. Sozio was able to testify though, he bolsters what those two witnesses had been saying the entire time. This was a fall down the stairs. And further, Dr. Sozio is able to- But wasn't that already in the record from the state's forensic pathologist that it could have been a fall? And that's what Dr. Sozio says. He says it could have been a fall. That was in the record from which Mr. Dunn's counsel argued it could have been a fall. And Dr. Sozio says nothing about the blood spatter evidence, which is very, very damaging to your client's case. There's blood everywhere. The main issue that Dr. Wagner and Detective Marks missed is the murder weapon. They're not able to explain what the- other than it's a blunt object that's missing, they're unable to explain what this murder weapon is, where it's located. Mr. Dunn was seen, witnessed by Letha and Willie in the entire time from when Mr. Torres ended up at the bottom of the stairs to when the police arrived. He had no time to bludgeon somebody to death. He had no time to hide the instrument. And Dr. Sozio is able to explain why the murder weapon is missing because there was no murder weapon. Well, that was the defense though at trial, I think. And of course, the state doesn't dispute that there was- that they couldn't produce the murder weapon. By the way, that happens in time to time in murders. The state doesn't have to produce the murder weapon and sometimes they can't. But was there testimony- I thought I remember that Mr. Dunn's girlfriend, I think her name is Lethea, is that right? Letha. Letha, Your Honor. Letha. She told the detective that she saw Dunn kick- I think she told the detective that she saw Dunn kick the victim. Was that evidence presented to the jury at trial? I know she later recanted that or said she didn't say that, but was her statement presented to the jury at trial? Her statement was, Your Honor. She also explained to the jury exactly why she had made that statement. She was under significant duress. She had not slept well. And she was repeatedly pressured by the detective to agree that Mr. Dunn had kicked Mr. Torres. She recanted and she explained that the only thing that she had seen Mr. Dunn do after Mr. Torres fell down the stairs was he attempted to help get Mr. Torres off the ground. And I think that really shows Mr. Dunn's state of mind. He clearly believed he was trying to help his friend back up after he was injured. Mr. Gallin, does the record reveal the time period between Torres's fall and the arrival of law enforcement as opposed to the time period between the initial 9-11 call when they were arguing and the arrival of law enforcement? It does not, Your Honor. We can infer based on the timing of the call and the arrival of officers. When the call was placed by Mr. Collins, police arrived eight minutes later. Mr. Collins was observing from some distance and he actually didn't see the main altercation. So there's no exact timeframe, but more than likely police arrived on the scene within three to four minutes of Mr. Torres's fall. And how much of the blood splatter, I mean, what's their testimony as to how much of the blood splatter was due to sort of boots on the ground, you know, people walking through it and pushing through it and possibly kneeling, you know, into it? This is something that Judge Simon includes in his opinion. That night, there was rain, there was heavy rain. There were a number of medics around the body and in photographs, there are photographs of boots right next to the blood evidence. And so, you know, there's some significant tampering with that blood evidence there. I'd also like to point out that this court held and can be faith quoting a 2009 National Academy of Sciences report that blood splatter expert testimony is inherently unreliable. But that was not, but hold on, hold on. To be fair to the state, that was not the blood splatter evidence which they relied upon. They didn't argue, they didn't rely on the trampled blood splatter evidence. They relied on the blood splatter evidence that had flown from the victim's body, which had been undisturbed. From what I understand, nobody's talking about the puddle of blood around the victim in which several people were walking. They're talking about the actual splatter evidence, not the blood that drained out of his body after he hit the ground, right? And I think one of the factors that helps explain the quantity of blood, Mr. Torres was a severe alcoholic. He had chronic alcoholism and cirrhosis of the liver. Cirrhosis of the liver leads to reduced clotting factors, which Dr. Sozio testified to. And it also leads to osteoporosis, which explains the more easily injured bones. Doesn't the district court's order basically read as follows. Whenever cause of death is at issue in a state homicide trial, defense counsel is constitutionally inefficient if he or she fails to consult with a pathologist. Isn't that what this order says? No, what the district court is saying, what the United States Supreme Court said in Richter, cases will arise where the only reasonable and available defense strategy requires consultation with experts. We realize that those are extreme cases and we think that this is the extreme case. This is a situation where counsel, as soon as he found out that Dr. Wagner would be testifying about the cause of death, that he needed to consult with another forensic pathologist. Because what he had is two witnesses. He knew that those two witnesses were going to be cross-examined by the state. He knew that there might be some inconsistencies and therefore he should have consulted with someone who was able to rebut the state's expert. Yeah, in hindsight, you can say that. But if you look back at the trial, if he had what he needed from the state's forensic examiner, which is he wasn't definitively able to conclude that it was a homicide. He had that, he argued that. He didn't consult a pathologist probably because the pathologist would have been cross-examined on blood spatter evidence. So the first rule of defense is don't make it worse for your client, right? It's the first rule of defending a case. So he doesn't consult with a pathologist because he argues at trial, the bat was clearly not the murder weapon and you don't have the murder weapon. So he's got evidence in the record that the state forensic pathologist could not conclude definitively that he was pushed or that it was a homicide. He's got no murder weapon and he's got no bat. And it wasn't the bat. Maybe as a strategic decision, he's better off arguing, look, the state can't produce the murder weapon. There is no murder weapon and there's no time for them to dispose of the murder weapon in the time the police responded rather than going after the forensic evidence. And now you're asking us to sit here, what, two or three or 12 years after the conviction, whatever it was in second guess defense counsel strategy. Williams readily admitted this was not a strategic decision. During post-conviction proceedings, he admitted that his judgment was obscured by the bat. Even six years later at those post-conviction proceedings, he still believed that the state's theory of the case revolved around the bat. When in fact, in closing argument, the state had conceded the bat had nothing to do with it. So this isn't a situation where Mr. Williams is making strategic choices whatsoever. It was that his judgment was obscured. And I wanna address Judge Rovner's, I'm so sorry, Judge Kirsch. Mr. Dowland, excuse me. Judge Hamilton. Quick question just about the facts between the two Dunn cases, this one and the one that from the Wisconsin bar that Judge Simon noted. In the Wisconsin case, which I said on the panel, the decedent had just fallen over flat on the ground from, he was about six feet tall. And in essence, the forensic evidence indicated that somebody who was drunk and who did not break his fall in any way was killed by that blow to the head. In this case, if I'm picturing this correctly, we've got Mr. Torres standing at the top of a six foot stairwell, right? Correct. And if he goes down, the total fall is gonna be what? Maybe 11, 12 feet unbroken. Is that right? Correct. Is that what, is that the theory? Okay, thanks. And I wanted to address a D1 prong really quickly. Judge Rogner, you had been discussing this. And actually, may I have a little bit more time to respond to this, your honors? Sure. And so the Indiana Court of Appeals here got the standard wrong in multiple ways. The first way is that they deferred to the trial court judge in giving him additional weight to his decision because he was also, this post-conviction judge also sat in the trial. That is incorrect under Strickland. It's contrary to Strickland to give the trial court judge extra deference. In fact, Strickland requires on the prejudice prong that only the record be examined. The second is that the standard of review was incorrect. Strickland prescribes a standard of review. It says that petitions for ineffective assistance of counsel are mixed questions of law and facts. And we know that facts are reviewed for clear error and that the law is reviewed de novo. And so when the Indiana Court of Appeals applied the unerringly and unmistakably standard, it was using the wrong standard of review in contravention of Strickland. Thank you. Thank you very much. Mr. Drum, you had asked for three minutes. That's correct, Your Honor. We will give you five. Thank you. First of all, Williams testified that his decision not to consult with the forensic pathologist was strategic right after he explained a strategy for not consulting with the forensic pathologist. He looked at the state's experts and thought their conclusions were logical and reasonable. And so he thought his best strategy was to argue about the missing murder weapon. Williams testified that if something would have seen illogical in the state's expert's conclusion, that would have triggered something. But he didn't see that here. At one point of clarification about the facts regarding Judge Hamilton's question, Torres didn't fall right over the balcony. If you look at the photographs that were presented at trial, his body ended at the bottom of the stairs, which indicates that he went at least somewhat down the stairs and not just straight over the balcony. So it wouldn't have been a 10 or 11 foot fall. And then one final point I want to make. To reach his conclusion, Dr. Sozio had to ignore some of the evidence. He thought that the injuries were more likely the result of a fall because he thought all of the injuries were in a line. But that's not true. They weren't all in a line. Dr. Sozio ignored that Dr. Wagner identified three skull fractures and Dr. Wagner also identified fractures in Torres's left ribs. Dr. Sozio completely ignores those to reach his conclusion. And if there are no further questions, the state would ask the court to reverse the district court. I gave you a gift and you're not taking advantage of it. I'm going to return to the court, Your Honor. Mr. Dunn, let me, I do have one question for you regarding what Mr. Williams' testimony. Mr. Williams testified when he testified that it was not a strategy decision. He first testified that I guess it would have been a bad strategy for him to have focused on the forensic evidence in this case. Is that what you're summarizing? In other words, he made a deliberate decision not to focus on the forensic evidence because it was bad for him. He focused on the fact that there was no murder weapon and that the bat was unequivocally not used to murder Mr. Torres. Is that right? That's correct. So he can say it. He can say, well, it wasn't a strategy decision, but what he actually testified to is it was a strategy decision because he did not want to focus on the forensic evidence here because this Mr. Torres was beaten awfully badly. And the less the jury heard about that, perhaps the better off Mr. Dunn would be. That was the strategy that Mr. Williams articulated, isn't it? It is, I agree. And it was a reasonable and effective strategy because the state didn't concede that the bat wasn't the murder weapon until rebuttal closing. Up until that point, it had always left that option open that the bat could have been used, that Dunn could have used the bat to murder Torres. It wasn't until rebuttal that the state had to concede that they couldn't prove it was the bat. So Dunn's counsel was effective there. Okay, yes? Yes, or do you want to add something? Anyone want to add anything? All right. So now, Mr. Dowland, you were appointed by the court, you and your wonderful professor, and you have the deep thanks of the court for the very fine job that you have done. And Mr. Drum, you have the thanks of the court as well for the very fine job that you have done. So thank you both. Thank you, Your Honor. When do you graduate, Mr. Dowland? I graduate in May of 2022. Keep studying. Thank you, Your Honor, I will. Okay, thank you. The case will be taken under advice.